IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARRIET SAVITCH, )<br>)<br>Plaintiff, )<br>)<br>v. )  Civ. No. 07-215-SLR<br>)<br>MARTIN KIRK, individually and in his )<br>official capacity as Code Enforcement Officer )<br>of the Department of Land Use of New Castle )<br>County, and NEW CASTLE COUNTY, )<br>)<br>Defendants. ) | |

Harriet Savitch, Wilmington, Delaware. Pro se Plaintiff.

Harshal Purohit, Assistant County Attorney, New Castle County Law Department, New Castle, Delaware.  Counsel for Defendants, Martin Kirk and New Castle County.

**MEMORANDUM OPINION**

Dated: 6/18/08
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Harriet Savitch ("plaintiff"), proceeding pro se, filed this action against defendants Martin Kirk ("Officer Kirk") and New Castle County, alleging Fourth and Fourteenth Amendment violations pursuant to the Civil Rights Act of 1870 and 42 U.S.C. § 1983. (D.I. 1) Plaintiff contends that the seizure of her person was the product of gross negligence and/or recklessness on the part of Officer Kirk in his official capacity and that New Castle County is vicariously liable for his actions. (Id.) Plaintiff also claims to have suffered psychological and financial damages and seeks punitive damages. (Id.) The court has jurisdiction over the present suit pursuant to 28 U.S.C. § 1343. Currently before the court is defendants' motion for summary judgement. (D.I. 20) For the reasons set forth below, the court grants defendants' motion.

## II. BACKGROUND[1]

According to plaintiff's complaint, on April 22, 2005, Officer Kirk, accompanied by a police officer and medical staff, arrived at plaintiff's residence, 16 Woodbrook Circle, Wilmington, Delaware, without any warrants. (D.I.1 at ¶ 4) Officer Kirk asked plaintiff to exit her residence and informed plaintiff "that he was concerned about her health and that they were taking [her] into custody ...." (Id. at ¶ 5) Plaintiff states that the police and medical personnel were present for the purpose of ensuring the seizure of her person, which was executed at the direction of Officer Kirk. (Id. at ¶ 8) Once seized, plaintiff says she was involuntarily admitted to Wilmington Hospital and then transferred

---

[1] Prior to the filing of this motion, plaintiff has twice allowed the deadline for discovery to elapse and has yet to produce discovery or answer defendants' interrogatories. Plaintiff also has not filed a reply to defendants' motion for summary judgment.

to St. Jones Behavioral Center. According to plaintiff's complaint, "the psychiatric doctor from St. Jones Behavioral Center found no basis for Plaintiff's admission for a psychological evaluation and release[d] Plaintiff."[2] (Id. at ¶ 10) Plaintiff has failed to provide any evidence supporting her complaint and the record before the court establishes the following facts.

Prior to April 22, 2005, Code Enforcement Officer Gregory Solomon ("Officer Solomon") inspected plaintiff's residence on at least two separate occasions. On March 4, 2004, Officer Solomon responded to plaintiff's residence and wrote directives regarding five code violations.[3] (D.I. 20, ex. A at Kirk Aff. ex. C) Officer Solomon re-inspected the property on November 8, 2004, and found no change. In Officer Solomon's log he notes that "pictures were taken and charges will be filed." (Id.) On April 22, 2005, Officer Solomon gained a search warrant for plaintiff's residence.[4] (Id., ex. A at Kirk Aff. ex. B) Officer Solomon along with Officer Kirk, who was the

---

[2] Plaintiff has presented no medical records to the court supporting this statement. Medical records provided by defendants from Wilmington Hospital Christiana Care indicate a clinical impression of "delusional behavior." (D.I. 20, ex. B at 7) Additionally Dr. Ernesto Cuba ("Dr. Cuba"), who signed the involuntary commitment papers, concluded that plaintiff was unable to make responsible decisions with respect to hospitalization and posed a danger to herself. (Id., ex. B at 2)

[3] The violations included the storage of two unregistered/inoperable vehicles on the property (both of which Officer Solomon noted were filled with trash), open storage of household items in the driveway and in front of the garage, and overflowing trash cans. (D.I. 20, ex. A at Kirk Aff. ex. C)

[4] The warrant signed by Magistrate Kenny indicates that a probable cause showing was made by Officer Solomon indicating plaintiff to be in violation of "BOCA Property Maintenance Code Sections 108.1.3 Unfit for HumanOccupancy; 303.1 Sanitation; 307.1 Infestation; 703.1 Accumulations and New Castle County Code 6-138(a)." (D.I. 20, ex. A at Kirk Aff. ex. B)

Community Governing Administrator for the Department of Land Use, went to plaintiff's residence to execute the search warrant. Following "customary procedures for inspecting problem properties," Officer Kirk contacted New Castle County Police and requested police assistance in executing the search warrant. Officer Kirk also contacted Mobile Crisis Intervention and asked for their presence at the scene.[5] (Id. at 4-5)

Upon arriving, Officer Kirk and Officer Solomon were joined by two New Castle County Police Officers, including Officer Babinger. Mobile Crisis was also on scene. (Id. at 5, ex. A at Kirk Aff. ex. A) Based on earlier contact with plaintiff, Kirk and Solomon knew that plaintiff's bedroom window served as the only means of egress because trash, debris, clothing, and furniture blocked all the doors. (Id. at 5) Therefore, Officer Kirk approached plaintiff's residence and knocked on plaintiff's front window. (Id.) After speaking briefly to plaintiff, and mentioning that a doctor with the Mobile Crisis unit was on scene and wanted to talk to her, Officer Kirk, Officer Solomon, and Officer Babinger proceeded to the rear of the residence and began conducting an exterior inspection. (Id., ex. A at Kirk Aff. ex. A) When they returned to the front of the property approximately fifteen minutes later, they found that plaintiff had exited her residence and was conversing with Dr. Cuba from the Mobile Crisis unit. (Id.) Officer

---

[5]Officer Kirk based his decision to call Mobile Crisis both on the fact that plaintiff "had admitted on several occasions that she stored trash and debris in her residence" and that Officer Solomon earlier that month communicated to Officer Kirk that he was "extremely concerned for Savitch's health, safety, and welfare." (D.I. 20 at 4-5)

Kirk then told plaintiff that they had a warrant to search the interior of her residence.[6] (Id., at 5-6; ex. A Kirk Aff. ex. C) Prior to their entering the residence, an ambulance arrived to transport plaintiff to the hospital under the direction of Dr. Cuba, who accompanied plaintiff to the hospital.[7] (Id., ex. A at Kirk Aff. ex. A) The search of the residence showed 3-4 feet of trash and debris in every room, a lack of water and sanitary facilities, and collapsed or collapsing ceilings in several rooms. (Id. at 6; ex. A at Kirk Aff. ex. A; ex. C) The residence was deemed unfit for human inhabitation by Officer Solomon. (Id., ex. A at Kirk Aff. ex. D)

While the officers concluded the search of plaintiff's residence, plaintiff was involuntarily admitted to Wilmington Hospital Christiana Care by Dr. Cuba. Plaintiff remained at Wilmington Hospital for approximately two hours and was then transferred to St. Jones Behavioral Clinic for further psychological evaluation. The commitment papers, admitting papers, and transfer papers all indicate Dr. Cuba as the admitting physician and defendant Officer Kirk's name does not appear on any of the hospital forms contained in the record. (Id., ex B)

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[6]Officer Kirk claims to be unaware of what was said between plaintiff and Dr. Cuba. Further Officer Kirk states that from what he observed the plaintiff voluntarily entered the ambulance and went to the hospital. (D.I. 20, at 5-6; ex. A Kirk Aff. ex. C)

[7]This is confirmed by Officer Babinger's police report that states, "Savitch was transported to Wilmington E.R. by Claymont Ambulance at the request of Dr. Cuba." (D.I. 20, ex. A at Kirk Aff. ex. A)

4

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Officer Kirk in his Official Capacity

Officer Kirk contends that plaintiff's claim against him in his official capacity should be dismissed because it is duplicative to the claim against New Castle County. In his capacity as a Code Enforcement Officer for the Department of Land Use of New Castle County, defendant Officer Kirk is a state official acting under color of state law. Suits against state officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690 n.55 (1978)). A "judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." Brandon v. Holt, 469 U.S. 464, 471-472 (1985). As such, "claims made against state officials in their official capacity are treated as claims made against the state itself." Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1985). In this case, New Castle County is already a defendant. Therefore, the claim against Officer Kirk in his official capacity is duplicative and should be dismissed.

### B. New Castle County Liability by Virtue of Respondeat Superior

New Castle County contends that it cannot be held liable under 42 U.S.C. § 1983, by virtue of respondeat superior, for alleged constitutional violations committed by it's employees. It is an established principle that, as a basis for liability under § 1983, the doctrine of respondeat superior is not acceptable. Monell 436 U.S. 658, 691. In

order to establish a claim of liability against New Castle County under § 1983, a plaintiff must plead and prove that (1) an officer of the county, acting under color of law, deprived an individual of his constitutional rights; (2) the county had a "policy, practice, or custom"; and (3) the county's implementation of that "policy, practice, or custom" caused the officer to deprive the individual of his constitutional rights. Id. at 694. Thus, in order to hold New Castle County liable under §1983, it must be shown that a policy or custom was the "moving force" behind the alleged constitutional violation. See Board of the County Comm'rs v. Brown, 520 U.S. 397, 400 (1997). The plaintiff in her complaint makes no allegation regarding the existence of any "policy, practice, or custom" that led to the alleged constitutional violation.[8] In her complaint, plaintiff asserts that New Castle County is liable on the basis that they employed Officer Kirk at the time of the incident. (D.I. 1 at ¶ 2, ¶ 20, ¶ 24). Accordingly, as no claim or evidence supporting a policy exists, New Castle County shall be granted summary judgment.

### C. Fourth and Fourteenth Amendment Claim

Plaintiff alleges that defendant Officer Kirk violated her right to be free from unreasonable seizure as guaranteed by the Fourth and Fourteenth Amendments.[9] In order to state a Fourth Amendment claim for unreasonable seizure, plaintiff must show

---

[8] The only policy, as shown by the record before the court, that the Department of Land Use of New Castle County had was to have New Castle County Police assist Code Enforcement Officers in the execution of search warrants. (D.I. 20 at 5) Nothing in the record indicates any connection between this policy and the constitutional violation as alleged by plaintiff.

[9] The Fourth Amendment "right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures" is applicable to state action through the Due Process Clause of the Fourteenth Amendment. U.S. Const. Amend. IV.; See Mapp v. Ohio, 367 U.S. 643 (1961).

that a "seizure" occurred. The Supreme Court has concluded that a person is "seized" when government actors have "by means of physical force or show of authority, ... in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). A seizure that triggers Fourth Amendment protection occurs "only if, in view of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." United States v. Mendenhall 446 U.S. 544, 554 (1980). Circumstances that might indicate seizure, even where the person did not attempt to leave, include the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id.. A Fourth Amendment violation, however, does not occur when an officer simply requests to speak to an individual. See Florida v. Royer 460 U.S. 491, 497 (1983), See also Florida v. Rodriquez, 469 U.S. 1 (1984).

    In the case at bar, plaintiff has failed to demonstrate a genuine issue of material fact as to whether she was seized and, if seized, that it was Officer Kirk who seized her in violation of the Fourth Amendment. While Officer Kirk did appear at plaintiff's window with Officer Solomon and two police officers, and told plaintiff that a doctor wished to speak with her, there are no facts before the court indicating that the officers ever displayed their weapons, used a threatening tone, or applied any force or compulsion on plaintiff inducing her to exit her residence and talk to Dr. Cuba.[10] At no

---

[10]The facts before the court show that Officer Kirk took steps to specifically avoid compelling plaintiff to exit her residence and converse with Dr. Cuba. As previously mentioned, following his brief discussion with plaintiff, Officer Kirk, Officer Solomon, and Officer Babinger proceeded to the rear of the residence to conduct an exterior search.

time is there any indication that a reasonable person in plaintiff's position would have believed they had been placed in custody or seized.[11]  Plaintiff's actions, while Officer Kirk was present, all appear voluntary in nature.  Accordingly, Officer Kirk's motion for summary judgment, regarding the Fourth and Fourteenth Amendment claims, shall be granted.

### D. Tort Claims Against Officer Kirk and New Castle County

New Castle County and Officer Kirk seek summary judgment on plaintiff's tort claims pursuant to the Delaware State Tort Claims Act, 10 Del. C. § 4011.  The Delaware State Tort Claims Act provides that, "except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages."  10 Del. C. § 4011(a).  The Delaware State Torts Claims Act does provide, however, that "an employee may be personally liable for acts or omissions causing property damage, bodily injury, or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent."  10 Del. C. § 4011(c).

With regard to New Castle County, it is immune from tort claims pursuant to the

---

They did not return to the front of the residence for a full fifteen minutes and, at this point, plaintiff had already exited her residence and was conversing with Dr. Cuba. (D.I. 20, at ex. A at Kirk Aff. ex. A)

[11]If a seizure of plaintiff's person did occur, Officer Kirk had no personal involvement.  As a Code Enforcement Officer, Officer Kirk lacks the actual or apparent authority to have any individual involuntarily committed under 16 Del. C. § 5003, which specifies that, "No person shall be involuntarily admitted to the hospital as a patient except pursuant to the written certification of a psychiatrist ..."  Plaintiff's claim that her involuntary commitment occurred at the direction of Officer Kirk is unsupported.

9

Delaware State Tort Claims Act.[12] With regard to Officer Kirk, plaintiff has provided no evidence to the court substantiating her claim of "gross negligence and/or recklessness." (D.I. 1 at ¶18) The record before the court shows that Officer Kirk acted both within his scope of employment and with reason. Nothing indicates that Officer Kirk exceeded his authority or that he acted with "wanton negligence or willful and malicious intent." Accordingly, summary judgment, as to the state tort claims, will be granted to both New Castle County and Officer Kirk.[13]

## V. CONCLUSION

Based on the foregoing analysis, the court will grant defendants' motion for summary judgment[14]. An appropriate order will issue.

---

[12]Nothing in the record indicates that any of the exceptions to immunity listed in 10 Del. C. § 4012 apply to the case at bar. Plaintiff has not demonstrated that the actions in question fall outside of the scope of the Delaware State Tort Claims Act.

[13]The court need not address the remaining arguments raised by defendants since the aforementioned issues are dispositive in this case.

[14]Defendants' motion to compel discovery (D.I. 15) is denied as moot in view of the court's holdings herein.